James H. MOLLOY, Individually and as Administrator With the Will Annexed of the Estate of Betty Haggin Molloy, Deceased; and as Trustee Under Agreement With Betty Haggin Molloy, Deceased; Lynn F. Molloy and the Second National Bank and Trust Company, Appellants,

v.

Patrick H. MOLLOY and Genevieve Molloy Wilson, Appellees.

Court of Appeals of Kentucky.

Feb. 13, 1987.

As Modified April 10, 1987.

J. Randall Reinhardt, Shelby C. Kinkead, Jr., Wayne F. Collier, Bulleit, Kinkead, Irvin & Reinhardt, William W. Allen, Gess, Mattingly, Saunier & Atchison, Lexington, for appellants.

Spencer D. Noe, Laurance B. VanMeter, Diane M. Carlton, Stoll, Keenon & Park, Larry S. Roberts, Fowler, Measle & Bell, Lexington, Richard W. Iler, Wyatt, Tarrant & Combs, Louisville, Robert S. Walker, III, Wyatt, Tarrant & Combs, Lexington, for appellees.

Before COMBS, LESTER and McDONALD, JJ.

COMBS, Judge.

This is an appeal from a partial summary judgment of the Fayette Circuit Court, and involves the will of Emma J. Haggin. Ms. Haggin died on February 22, 1969, survived among others, by her daughter, Betty Haggin Molloy. Ms. Molloy died on May 29, 1984, survived by her three children; appellant, James H. Molloy ("Mike"), and appellees, Patrick H. Molloy ("Pat"), and Genevieve Molloy Wilson ("Genny"). Emma Haggin's will left interests in a family farm and corporate stock to her daughter, Betty Molloy. These interests are the issues here.

The farm is where Mike was living with Ms. Molloy at the time of her death. She purported to convey to Mike by deed of May 20, 1982, fee simple title to approximately twenty-four acres of the farm which surrounded the farmhouse and outbuildings. This she did for one dollar and Mike's love and affection. Mike mortgaged this real estate to appellant, The Second National Bank and Trust Company, on February 27, 1984.

Appellants claim Emma Haggin's gift of land to Betty Molloy included the right to convey fee simple title in the acreage. Appellees contend the gift was only a life estate, with limited power to sell or invest, and with one-third remainder interest for each of Ms. Molloy's children. These remainder interests, if any, is one of the two issues in this case. The other issue involves appellees' remainder interests, if any, in the stock that passed by the Emma Haggin will to Betty Molloy. The stock in question is twelve thousand shares of Tenneco, Inc. Appellants claim that Emma Haggin left the stock to Betty in fee simple. They go on to say that even if Betty had only a life estate in the stock, with a remainder over to her three children, the issue is moot because the children have received full value in the form of money and improvements to the farm in which they have a remainder interest.

Appellees argue that Emma Haggin left Betty only a life estate in the stock, and could only sell it for the best obtainable price, and reinvest it, but the stock or proceeds from it were to go to Betty's children upon her death. Appellees say they have not realized any of their remainder interests in the stock.

We will first resolve the issue of Betty's conveyance of the twenty-four acres to Mike, and whether, as the trial court concluded, such a conveyance was void because of the remainder interest of the children. There is no dispute that whatever interest in the twenty-four acres Emma Haggin left Betty, she left according to Article IV, the residuary clause of her will. There she stated:

ARTICLE IV. All the rest, residue and remainder of my estate of every kind and character, wherever situated, including all property over which I may have a power of appointment and any lapsed or void legacies or devises, shall be divided by my Executor into three (3) equal shares, and I hereby give, devise and bequeath said three shares respectively as follows:

A. One of said shares to my daughter, Betty Haggin Molloy, for and during her natural life, with the remainder in fee simple at her death to her issue per stirpes....

There shall be including in the share of my daughter, Betty Haggin Molloy, and her issue as a part thereof the following described property, upon which is located my dwelling house: [here follows a legal description of the 24 acres]....

E. My daughters, Emma and Betty and my son, Louis Lee, as life tenants of the respective shares herein devised to them, shall have the right at any time, and from time to time, to sell, assign, transfer and convey the whole or any part of their respective shares upon such terms and conditions as they in their sole discretion shall determine and to invest and reinvest the proceeds of any sale or sales in such property, either real or personal, as they may select, and no purchaser shall be required to look to the application of the proceeds of the sale. They shall have the right to register any securities constituting a part of their respective share or cause the same to be issued either in their individual names or as life tenants, with the remainders over as provided in this will; but all property, both real and personal, constituting a part of their respective shares held as life tenant by them, and each of them, including investments and reinvestments thereof which may be made from time to time, shall be kept separate and apart from other property owned by them. My said daughters and son shall be entitled to the possession of all such property constituting their respective shares in which they hold a life estate without being required to furnish security therefore, and they shall not be liable for the loss of any part thereof nor for any loss due to investments which they may make, nor shall they be required to file any accountings or settlements.

■ It appears crystal clear to this court that Emma Haggin left Betty Molloy a life estate in the land with a remainder over to Betty's issue *per stirpes*, and that during her life tenancy Betty had a duty to preserve the interests of the remaindermen.

Appellants argue that simply because Emma Haggin empowered Betty with the discretion to "sell, assign, transfer and convey" the land, that by the holding in *Melton v. Wyatt*, Ky., 517 S.W.2d 242 (1974), Betty's conveyance of fee simple title to Mike was not improper. But the Melton will gave the life estate beneficiary full and unlimited power to *dispose of the property in any way she saw fit*, and only *whatever was left upon her death* would pass to the remaindermen. Emma Haggin did not give Betty that power, but only the power to sell, invest and reinvest her life estate property for the benefit of the remaindermen. This is made more evident by Emma Haggin's instruction to Betty to keep the proceeds of any sale or investment of the property she held as life tenant separate from her other property. Thus, Betty could not gratuitously convey the acreage to Mike for one dollar, love and affection.

But appellants go on to say that Betty did not give Mike the property in fee simple, but Mike gave her valuable and adequate consideration in that he cared for her and saw to her affairs in the latter years of her life. This is really immaterial. It is law without need of citation that one cannot pass interest to property greater than the interest one possesses. Betty held a life estate in the twenty-four acres with a fiduciary responsibility to the remaindermen to preserve their interests. Therefore, although Betty purported to convey a fee simple title to the twenty-four acres to Mike, the deed was effective to convey to

Mike her life estate but not Pat's and Genny's remainder interests in the property.

Now we turn to the issue of the Tenneco, Inc., stock. Emma Haggin's estate included twelve thousand shares of preferred stock in this company, valued at over one million dollars. There is a disagreement between the parties over which Article of Emma Haggin's will did this stock pass to Betty. Appellees say that the stock passed through Article IV of the will, previously appearing in this opinion. Therefore, their argument follows parallel to theirs about the land. That is, appellees say that Betty held a life estate in the stock with the power only to sell it for the best price obtainable, or to invest and reinvest it. But at all times, appellees say, Betty was to preserve the interest of the remaindermen; Pat, Genny, and Mike. Betty was to keep the stock, or its proceeds, separate from her own property, so that upon her death the children could realize their inheritance.

■ Appellants disagree and contend that Article II of Emma Haggin's will gave the stock to Betty in fee simple. Article II states:

ARTICLE II. All my household and kitchen goods, furniture, rugs, pictures, silver, linens and other such equipment, and all my jewelry, clothing and personal articles and effects, I give to my three children, Betty Haggin Molloy, Louis Lee Haggin II and Emma Haggin Parrish, to be divided between them equally, share and share alike.

Whether Article II gave the stock to Betty hinges on the meaning of the phrase "and personal articles and effects." Appellants say this phrase demonstrates Emma Haggin's intention to leave over one million dollars worth of stock, almost as an afterthought, along with such items as rugs, linens, and kitchenware. We think not.

The doctrine of *ejusdem generis* provides guidance here. This Latin translated means "of the same kind or class." *Ballantine's Law Dictionary*, 3d Ed., p. 393.

An elaboration on this meaning as applied to wills is found in *Hall's Administrator v. Compton*, Ky., 281 S.W.2d 906 (1955). It rightly says that when words of a specific nature are followed by general words, the meaning of the latter is limited to things of the same class as those theretofore specifically mentioned. We find it beyond serious reason to suggest that this multitude of Tenneco stock is in the same class as bedspreads and tablecloths.

Furthermore, under Article IV of the will, Emma Haggin tells Betty that she can register "any securities constituting a part of [her] shares," or she could have them issued in her name or as "life tenant." Article IV, paragraph E, goes on to provide for the remainder over. Even Betty's own actions revealed that she conducted bank transactions of the stock under the rubric of "Betty Haggin Molloy—life tenant," and she herself signed receipts for the stock as "life tenant." We hold, as did the trial court, that Betty had a life estate in the stock and her children a remainder interest.

But appellants stand on one more leg. They say that even if Betty had a mere life estate in the stock, with a remainder over to her children, their remainder interest has already been realized because during her life Betty gave her children equal portions of $600,000, and made substantial improvements to the 378-acre farm in which they have a remainder interest. The upshot of this, according to appellants, is that appellees' claim to the stock is moot. We disagree.

■ The trial court did not determine in its partial summary judgment whether the $600,000 was or was not ever distributed to the children. That is not before this court. The improvements Betty made to the farm she made with her own funds, and those are not a factor to determine the right to the stock or its proceeds.

■ Finally, appellants urge this court to agree that since appellant Lynn Molloy, Mike's wife, was not named in appellees' motion for partial summary judgment hav-

ing to do with the twenty-four acres she is not bound by the judgment subsequently entered. The judgment determined title to the property. As it did, it disposed of any inchoate dower rights Lynn Molloy may have had in the property.

This court in deciding this case was mindful of CR 73.02(4) which permits this court to award appellees damages and costs if in the court's opinion the appeal was frivolous. Frivolity by the rule exists where there is such a lack of merit that bad faith is apparent. The appellants obviously had some sort of faith in this appeal. Yet, as we cannot determine what was the nature of appellants' faith, we likewise cannot conclude their faith was bad, anymore than it was desperate.

The judgment of the Fayette Circuit court is affirmed.

All concur.